(Superior Court of Cincinnati.)

## THE AMERICAN ROOFING COMPANY v. THE MEMPHIS & CINCINNATI PACKET COMPANY.

---

Where the contract for transportation is made with the consignor, he may sue for its breach in the failure to carry and safely deliver, whether he retains any property in the goods or not, the recovery being for the benefit of the consignee if he was the real owner.

A return of the bill of lading by the consignee to the consignor must be regarded as a transfer by the consignee of all the rights and interest in the bill of lading and the claims represented thereby, to the consignor.

A provision in a bill of lading that "the company agrees to carry the goods to the said destination, if on its road, otherwise to deliver to another carrier on the route to destination" while a limitation of the company's liability to that extent, yet its obligation is not satisfied by delivery to a

wharfboat, but its liability as common carrier continues until actual delivery to another carrier; and if the goods are destroyed by the burning of the wharfboat, the company is liable for the loss.

JACKSON, J.

The plaintiff herein seeks to recover from the defendant the sum of $806.40, being the value of two consignments of goods shipped by plaintiff on April 15, 1896, and consigned to two different parties in Nashville, Tenn., and which were destroyed by fire at Evansville, Ind., on or about April 18, 1896. The defendant company operates a line of steamboats between Cincinnati, Ohio, and Memphis, Tenn., but does not carry to Nashville, Tenn. In shipping goods from Cincinnati to Nashville, it is customary for the defendant to transfer the goods either at Paducah, Ky., or Evansville, Ind., to a wharf-boat, whereupon they are delivered to another river carrier to be transported to Nashville. The defendant issued to the plaintiff two receipts or bills of lading for the goods in question, which stipulated upon the face thereof, as follows: "Received from the American Roofing Co. By Memphis P'kt. Co. the property described below, in apparent good order except as noted, . . . . . marked, consigned and destined as indicated below, which said company agrees to carry to the said destination, if on its road, otherwise, to deliver to another carrier on the route to said destination."

There is a further provision on the face of the receipt stating that the provisions on the back are part of the contract.

The destination of the goods is given below as follows, on one: "Webb, Stevenson and Phillips, Nashville, Tenn.;" on the other: "Phillips and Buttorf M'f'g. Co., Nashville, Tenn."

On the back of the receipt appears the following condition: "No carrier shall be liable for loss or damage not occurring on its own road, or its portion of the through route. nor after said property is ready for delivery to the next carrier, or to consignee."

The form of the receipt or bill of lading was furnished by the plaintiff, and when the defendant received the goods it signed the same and also stamped upon the face of it the following: "Dangers of Fire, Navigation and Explosion excepted. Privilege Lightering, towing, storing and re-shipping, also receiving, delivering and storing on wharf-boat." The defendant transported the goods safely to Evansville, Ind., and there delivered them to a wharfinger on board a wharf-boat who held them awaiting delivery to the connecting carrier for Nashville. While in his possession the wharf-boat was burned on April 18, 1896, and the goods consisting of cor-rugated iron and iron sheeting, were injured by the fire, and sunk. A part of the goods were recovered by an insurance adjuster who sold them and still retains the proceeds. The plaintiff claims that the goods were but little damaged by the fire, and that if they had been returned, it would have sustained but little loss, while the defendant claims that the goods were almost totally ruined. It is shown that the fire was not the result of any negligence on the part of the defendant or of the wharfinger. It is also shown that the wharfinger was not (unless by operation of law) the agent of the defendant.

The contract between plaintiff and the consignees for the purchase and shipment of the goods provided that they were to be shipped "F. O. B." Nashville; and on the date of the delivery of the goods to the defendant, the plaintiff mailed to the consignees the bills of lading in question, and also invoices, which latter contained the following: "Shipped in good order at your risk. All claims for damages must be made on transportation company."

The consignees retained the bills of lading until May 11, 1896, when they were returned to plaintiff at the latter's request, and plaintiff thereupon shipped to the consignees other goods to duplicate the original order which had been lost by fire.

It is insisted by the defendant in the first place, that the plaintiff can not maintain this action, for the reason that the goods were "at the time they delivered them to the common carrier, the property of the consignees at Nashville," and that therefore the right of action, if there be any against the defendant, belongs solely to the consignees. But this objection can not be maintained. For admitting that the title to the property passed to the consignees by reason of the shipment and the delivery of the bills of lading and the sending of the invoices stating that the shipments were at consignees' risks, it is nevertheless clear that the contracts of shipment were made by the defendant with the plaintiff, and not with the consignees. This fact alone, would give the plaintiff a right to maintain an action upon the contract for the loss of the goods.

In R. R. Co. v. Emrich, 24 Ills. App., 245, the law upon this point is clearly and forcibly stated as follows:

"The consignor of goods intrusted to a common carrier may maintain an action for a failure to carry and safely deliver, the contract for transportation being with him." And further on, p. 247, the court states the rule as follows: "Appellant urges with seeming earnestness that appellee cannot maintain this action, because, as counsel say, he was 'only the shipper or consignor,' and they insist that he must prove that he is

the owner of the goods before he can sue for their loss. In other words, they assume that, inasmuch as the law presumes, in the absence of proof, that the consignee is the owner, therefore, the consignor cannot sue. The legal position is untenable. The contract for transportation being with the consignor, he may sue for its breach in the failure to carry and safely deliver, whether he retains any property in the goods or not, the recovery being for the benefit of the consignee if he was the real owner."

The same rule of law is stated in Hutchinson on Carriers, secs. 723, 724, 725, 726, 727, 728, 729, 730, and 736.

In addition to this, the agreement between the consignor and consignees provided that the goods were to be shipped "F. O. B.," Nashville, and it is held by numerous authorities, that if the consignor has agreed to deliver the goods to the consignee at the particular place to which they are consigned, then the consignor may maintain such action.

Hutchinson on Carriers, sec. 734.

Furthermore, the bills of lading were returned by the consignees to the consignor, and the consignor thereupon duplicated the original order. This must be regarded as a transfer upon good consideration by the consignees of all their rights and interests in and to the bills of lading and the claims represented thereby, to the consignors. This alone would entitle the plaintiff to sue on the bills of lading as transferee of choses in action.

It is next urged by the defendant that its liability for any loss or damage to the goods terminated upon its delivering the same to the wharfinger at Evansville, and their being received and stored on the wharf-boat ready for delivery to the next connecting carrier. In order to claim such exemption from liability, it is necessary for the carrier to show an express contract with the shipper to that effect. The rule in the U. S. courts seems to be that when goods are received by a carrier, marked and destined to a point beyond its limit, the liability of the carrier, in the absence of an express contract, is to carry the goods to the end of its line and deliver safely to the next connecting carrier in the route beyond. R. R. Co. v. Mf'g. Co., 16 Wallace, 324. But in most of the states, and in Ohio, the law seems to treat the obligation of the carrier under such circumstances as continuing throughout the entire route. R. R. Co. v. Emrich, 24 Ills. App., 245; R. R. Co. v. Pontius, 19 Ohio St., 237; Mack, Stadler & Co. v. The Great Western Dispatch, 3 O. C. C., 43.

In all cases however, it is competent for the carrier to limit its liability by express contract. In the case at bar, however, we think there is no limita-

tion by contract as expressed in the bill of lading, which relieves the carrier *from all liability before the goods are actually delivered to the next carrier.*

On the face of the contract it is expressly stated that the company "agrees to carry the goods to the said destination, if on to its road, otherwise, to deliver to another carrier on the route to said destination."

To this extent there is a limitation on its liability, but its obligation is not satisfied by delivery to a wharfboat, *its common carrier liability must continue until actual delivery to another carrier.*

Defendant relies upon the condition on the back of the receipt, heretofore referred to in support of its claim. But we think such condition is not inconsistent with the agreement on the face of the receipt. The words "ready for delivery to the next carrier" should, if possible, be given a construction consistent with the agreement on the face of the contract, and we think such words are fairly susceptible of the construction, that the initial carrier's liability is to continue until the goods are either actually or constructively in the possession of another carrier. In other words, that the shipper is entitled to hold some one liable as *a carrier* for the safety of the goods throughout the entire voyage. If the language is ambiguous, every presumption must be in favor of the shipper: and even if the words on the back of the contract be inconsistent with those on the face, we think the agreement on the face of the contract should control. Because where there are two inconsistent provisions in such contract, the law will favor that which tends the least to diminish the carrier's common law liability. As said in R. R. Co. v. M'fg. Co., 16 Wallace, 319: "The court expresses itself against any further relaxation of the common law liability of common carriers." The fact that plaintiff furnished the form of bill of lading, and that in its reply filed herein, it admitted the condition on the back of the bill of lading to be the contract, does not alter the rule, because the contract was admitted in evidence, and it must speak for itself. Under the Ohio statute relative to variance between the pleadings and proof, the admission in the reply can not be regarded as controlling.

Again, it is insisted by defendant that it is exonerated from liability in this case by reason of the provision stamped upon the face of the receipt, exempting the carrier from dangers of fire and giving it the privilege of storing on wharfboat. Inasmuch as the fire occurred without any negligence, defendant would not be liable as a warehouseman, or even as a carrier, if effect is to be given to the provision exempting from liability on account of fire.

But in order to relieve the defendant

from its common law liability and from liability according to the terms of the contract offered by the plaintiff, by virtue of a provision stamped upon the face of the contract after the goods had been received by the carrier and the contract of shipment signed by its agent, we think it necessary that it should appear that the shipper assented to or acquiesced in such provision.

In the case of R. R. Co. v. Mf'g. Co., 16 Wallace, 319, there was a printed condition upon the back of a bill of lading to the effect that all goods would be at the risk of the owner while in the company's warehouse, except such loss or injury as might arise from the negligence of the agents of the company.

The goods in question were destroyed by fire while in the company's depot waiting delivery to the next carrier, and without any negligence on the part of the defendant, and the court held that such a provision, not expressly assented to by the shipper, would not relieve the carrier from its common law liability.

The syllabus is as follows: "Although a common carrier may limit his common law liability by special contract assented to by the consignor of the goods, an unsigned general notice printed on the back of the receipt does not amount to such a contract, though the receipt with such notice on it may have been taken by the consignor without dissent."

Assuming that the defendant was not entirely relieved from liability by delivering to the wharfinger, it is difficult to distinguish this case in 16 Wallace, from the case at bar.

The same rule was laid down by the Supreme Court of Ohio in case of Gaines v. Union Transportation Co., 28 Ohio St., 418. There the carrier attempted to relieve itself from liability before giving notice of the arrival of the goods. The court said, "when the carrier claims exemption from such liability, under a bill of lading not signed by the owner or consignor of the goods, he must aver and prove that such bill was assented to by the shipper." This case has been followed without report in 52 Ohio St., 687, and 53 Ohio St., 681. To the same effect is the case of Mack, Stadler & Co. v. Great Western Dispatch, 3 C. C. R., 337.

We therefore think that the provision stamped upon the face of the receipt by the agent of the carrier after the delivery of the goods to it, was not binding on the shipper, it not being shown that he expressly assented to such provisions.

Independently, therefore, of the question of negligence which has been raised in this case, we think the carrier is liable for the loss occurring, by reason of the contract of carriage.

Without therefore considering the question of defendants' negligence in not saving the goods from the water after the fire, we find that the defendant is liable for the value of the goods, less the value of such portion of the same as was returned to plaintiffs after the fire.

H. P. Lloyd and J. W. O'Hara, for plaintiff.

Johnson & Levy, and W. H. Jones, for defendant.